831 F.2d 1064
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Viol & Greta TRICE, Plaintiffs-Appellants,
v.
LAKE & COUNTRY REAL ESTATE, a Michigan partnership; Dale
Carl Chimenti d/b/a Lake & Country Real Estate;
Gary Thomas, jointly and severally,
Defendants- Appellees.
 No. 86-1205.
 United States Court of Appeals, Sixth Circuit.
 Oct. 29, 1987.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES, and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case concerns allegations of racial discrimination in plaintiffs' unsuccessful attempt to purchase real estate. Plaintiffs Viol and Greta Trice are a black couple who were interested in buying vacation property in northern Michigan. Mr. Trice was engaged in business in Lansing, Michigan. In August of 1983, one of Trice's customers, James Hawks, told Trice that he and his wife had some property for sale for less than $20,000, which was listed with defendant Lake & Country Real Estate, and Trice would need to make arrangements through them, if interested.
 
 
 2
 On August 22 Trice called the Lake & Country office in Au Gres, Michigan, and spoke with salesman Douglas DeLude. DeLude told Trice over the telephone that some property was available for $25,000. DeLude arranged for Trice to meet him at the office on August 26. Trice identified himself as Don Williams over the telephone, fearing that his name might suggest his race, and that he would not be afforded a fair opportunity to buy if the realtors knew that he was black. Identifying himself as Don Williams, he went to Lake & Country's office on August 26.
 
 
 3
 At Lake & Country's office, DeLude told Trice, after meeting him, that the only available property was selling for $95,000 to $150,000. When Trice asked about the lower price range they had discussed over the telephone, DeLude responded that all property selling in the $15,000 to $20,000 range was available only on a cash basis. Gary Thomas, manager of the Au Gres office, allegedly confirmed that the lower priced property was available only for cash. Trice asked to see the Hawks' property. DeLude told him that it was available only for cash and that Trice would be wasting his time to look at it. Trice insisted on seeing the Hawks' property, and DeLude agreed to take him to see it.
 
 
 4
 On the way to the property, DeLude again told Trice that the Hawks wanted cash. When they got to the Hawks' property, DeLude exited but he told Trice to stay in the car. DeLude went into the Hawks' home and apologized for bringing a "spook" to see the property. Mrs. Hawks asked what he meant, and DeLude responded, "you know, a damn nigger." Mrs. Hawks asked what difference that made, and DeLude told her that they do not pay their bills and that property values would go down if they acquired the property. DeLude told the Hawks that he had told Trice the property was available only for cash. The Hawks, however, said it was available on a land contract, but DeLude advised them to sell to Trice only for cash because he would not pay his bills, because "that's the way they are."
 
 
 5
 Trice, who had gotten out of the car and overheard some of this conversation, went into the home and asked the Hawks why they were insisting on cash only. Mrs. Hawks responded that they were willing to sell on a land contract. DeLude again insisted that the property would be sold only for cash, asserting that the listing contract required cash. DeLude refused, moreover, to let Trice see a copy of the listing contract.
 
 
 6
 When they left the Hawks', Trice asked if he could see other property in the area, but DeLude told him none was available. On the way back to the office, DeLude reiterated that the Hawks' place was available only for cash and told Trice that he could not afford it. Trice said that he thought he could afford it, and asked if he could use the telephone to make arrangements to get the money. DeLude would not let him use the telephone. Trice then asked to make an offer and a down payment of $1,500. DeLude said that would not be enough and that he would be wasting his time by taking Trice's offer. Thomas said he would type up Trice's offer, but doubted that the Hawks would accept it.
 
 
 7
 On August 29, Trice delivered two alternative offers to the Lake & Country office. One offered a downpayment of $2,000 and remaining payments totalling $17,500 on a land contract. The other offered a cash purchase for $19,500. The offer was to remain open for five days. Thomas told DeLude to contact the Hawks about the offers. The Hawks came to the Au Gres office to review the offers. Mrs. Hawks told DeLude that they preferred the land contract offer but wanted a credit report, which was a new condition. On September 3, the last day of Trice's offer, the Hawks accepted the land contract on certain added conditions not part of the original offer. Thomas mailed the conditional acceptance to Trice after time for acceptance of the original offer had lapsed. Trice withdrew his offers on September 14, considering them to have lapsed. Because no purchase was ever consummated, and because they felt that defendants were responsible, the Hawks also sued the defendants based on discrimination.
 
 
 8
 The Trices sued Lake & Country Real Estate, owners Dale and Carl Chimenti, manager Gary Thomas, and salesman Douglas DeLude, alleging violations of the Fair Housing Act, the Civil Rights Act sections 1981 and 1982, the Michigan Elliott-Larsen Civil Rights Act, negligent hiring and supervision, breach of contract, and slander. The Hawks also sued the Chimentis, Thomas, and DeLude for violating the fair housing statutes by interfering with their attempt to sell real estate to a black couple.
 
 
 9
 Immediately prior to trial, DeLude allowed a default judgment to be entered against him, but the case proceeded to trial with respect to the remaining defendants. Following the trial, the jury returned a verdict of no cause of action in favor of all defendants. The court entered an order on that verdict, but later amended the order, entering judgment against DeLude, but awarding no damages against DeLude, and entering judgment in favor of the remaining defendants in all respects. Plaintiffs moved for relief from the judgment and for a judgment notwithstanding the verdict, which motions were denied. The Trices now appeal.
 
 
 10
 The first issue on appeal is whether the district judge erred in not granting a JNOV on the issue of damages against DeLude, whose liability was established by the entry of default judgment against DeLude. ("Final judgment of default shall and does hereby enter against Defendant Douglas DeLude as to all issues of liability brought against him in this matter.") (emphasis in original). See also Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir.1983) ("a 'default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint....' Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.") (citations omitted). The difficulty with the case is the effect upon DeLude in light of his default and the jury verdict of "no cause of action" filed in favor of all defendants. The court entered a judgment in favor of plaintiffs against DeLude, but for no damages.
 
 
 11
 Plaintiffs argue that the jury's failure to award damages resulted from two erroneous instructions. First, concerning liability under the Fair Housing Act, the court instructed the jury that plaintiffs had the burden of proving, among other things, that they were "prevented from inspecting, negotiating for, or purchasing housing...." (emphasis added). Plaintiffs point out that the law does not require a plaintiff to show that he was actually prevented from inspecting, negotiating, or purchasing housing. Rather, they argue that any attempt to impede, delay, or discourage a real estate transaction on a racial basis violates the Fair Housing Act's section 3604. See, e.g., Heights Community Congress v. Hilltop Realty, Inc., 629 F.Supp. 1232, 1249 (N.D.Ohio 1983) ("It is not necessary for racial steering to be successful in order for the act to violate section 3604(a), for attempts to steer are also proscribed."), aff'd in part and rev'd in part on other grounds, 774 F.2d 135 (6th Cir.1985), cert. denied, 106 S.Ct. 1206 (1986); Zuch v. Hussey, 394 F.Supp. 1028, 1048 (E.D.Mich.1975) (that defendants were unsuccessful is irrelevant; "the law makes it unlawful even to attempt"), aff'd mem., 547 F.2d 1168 (6th Cir.1977). In determining whether section 3604 has been violated, courts are to look to
 
 
 12
 whether the statement or conduct would have an untoward effect on a reasonable person under the circumstances who is seeking housing, and behind the statement or conduct to the intent of the agent. If a statement or act would have a discriminatory effect and is made with the intent to steer, it violates section 3604(a).
 
 
 13
 Heights Community, 774 F.2d at 140 (citing Zuch v. Hussey). In this case, we conclude that a reasonable person under the circumstances would have been discouraged from pursuing the deal with the Hawks; Mr. Trice, however, was unusually persistent. At the same time, defendants did not actually prevent Trice from buying the property or prevent him from negotiating a contract; the deal simply fell through after the Hawks made a counteroffer conditioned on a credit check. DeLude, however, clearly discouraged or attempted to discourage Trice. Because DeLude's discriminatory motivation is clear from his remarks and actions, his attempts to discourage Trice were unlawful as alleged.
 
 
 14
 After examining the court's instructions to the jury in their totality, we find no demonstrated error in them. Had the jury not been confused as to the effect of the default, however, it would not have returned a "no cause of action verdict" in favor of DeLude. Given DeLude's admission in the form of a default, plaintiffs were entitled at least to nominal damages against him. JNOV as to defendant DeLude should have been ordered.
 
 
 15
 The jury's returning a "no cause of action" verdict against all defendants, including DeLude, indicates that the jury did not understand that DeLude's liability had been established. The trial court attempted to correct the problem by entering a judgment of liability against DeLude. The jury's confusion on default, however, was prejudicial to plaintiffs because the jury apparently believed that it was free not to award any damages.
 
 
 16
 We conclude that plaintiffs are entitled to a damages award against DeLude even though DeLude did not actually prevent them from negotiating for or purchasing the property. See Carey v. Piphus, 435 U.S. 247 (1978),[1] ("the individual claimants in this housing discrimination case are entitled to nominal recovery even if the appellees demonstrate ... that the claimants suffered no actual damages.") See also Jordan v. Dellway Villa of Tenn., Ltd., 661 F.2d 588, 594 (6th Cir.1981), cert. denied, 455 U.S. 1008 (1982), and McDonald v. Verble, 622 F.2d 1227, 1233, 1235 (6th Cir.1980). A plaintiff in a housing discrimination case may assert, as have plaintiffs in this case, a claim for emotional distress based on a discriminatory statement relating to a specific discriminatory transaction. Stewart v. Furton, 774 F.2d 706, 710 (6th Cir.1985).
 
 
 17
 Plaintiffs are entitled to a new trial on damages as to DeLude. We accordingly remand this case for a determination of the damages to be awarded against DeLude. We note that no economic damages are warranted for loss of the sale because DeLude was not shown to be responsible for the parties' inability to reach an agreement.
 
 
 18
 There remain questions concerning the liability of Lake & Country Real Estate, owners Dale and Carl Chimenti, and manager Gary Thomas in light of DeLude's liability. The district court will need to determine whether these defendants are liable, and if so, to what extent based on respondeat superior principles as a matter of law. See Mair v. Rife, 503 F.2d 735, 740-42 (6th Cir.1974); Heights Community, 629 F.Supp. at 1250, aff'd, 774 F.2d 134, 141 (6th Cir.1985).
 
 
 19
 For these reasons, we REMAND this case for further action consistent with this opinion.
 
 
 
 [1]
 In Carey, the Supreme Court held that a plaintiff deprived of procedural due process was entitled to nominal damages even though no compensable injuries were shown. See 435 U.S. at 266