Dorothy **WEATHERS**, Plaintiff-Appellant,

v.

**PETERS REALTY CORPORATION et al.,**
Defendants-Appellees.

No. 73–1950.

United States Court of Appeals,
Sixth Circuit.

Argued April 18, 1974.

Decided July 5, 1974.

Richard Brudzynski, Avery S. Friedman, Cleveland, Ohio, for plaintiff-appellant.

Stanley D. Gottsegen, Gottsegen, Tucker & Blake, Cleveland, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and MILLER and LIVELY, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The named plaintiff, Dorothy Weathers, a black person, filed the present class action against the defendants, Peters Realty Corporation and others, "on behalf of herself and all other black citizens of the United States who have been or will be seeking housing" at a thirteen rental suite apartment building owned by the Peters Realty Corporation in Cleveland Heights, Ohio.

The complaint sought injunctive relief and also monetary damages in the amount of $10,000 compensatory damages and $10,000 punitive damages for "the Plaintiff and the class she represents."

The genesis of the action occurred when the plaintiff visited the defendants' apartment building to inquire about renting an apartment suite and was told by Mrs. Dailey, wife of the apartment's custodian, that no suites were available. The plaintiff apparently had prior information about the pending availability of suite No. 1 in the apartment. She testified that she obtained the information from a Mr. Niermann, a friend of hers. Prior to the plaintiff's visit, Niermann and his wife, who are white, visited the apartment building, ostensibly seeking to rent a suite, and obtained a promise from Mrs. Dailey to hold for them the No. 1 suite which was about to be vacated. Niermann, obviously timing his call immediately to precede the plaintiff's visit to the apartment, telephoned Mrs. Dailey, according to his testimony, to withdraw his previously expressed interest in suite No. 1. After the plaintiff's visit, a Mr. and Mrs. Lind, a white couple and friends of the plaintiff and the Niermanns, visited the apartment, also to inquire about the availability of a suite. The Linds were shown suite No. 1 by the Daileys. There is testimony to indicate that they told the Linds of the Niermanns' interest in the suite, but nevertheless offered it for rental to them.

Following the institution of the present action, the defendants offered to rent an apartment suite to the plaintiff under the same terms and conditions as extended to the previous tenant who was white. Plaintiff declined the offer.

After conducting a hearing on the plaintiff's request for injunctive relief, the district court dismissed the action at the plaintiff's cost. The dismissal order was based on four conclusions: (1) That the class aspect of the plaintiff's action was without support in fact and failed to meet the minimal requirements of Rule 23, Fed.R.Civ.P.; (2) That the plaintiff's motion for preliminary and permanent injunctive relief was mooted by virtue of the defendants' offer to lease the apartment suite to the plaintiff and her subsequent rejection of the offer; (3) That the plaintiff's charges of racial discrimination were discredited by the uncontroverted evidence that the apartment house is and has been integrated with a 23% minority occupancy; and (4) That the sale by an operating officer of Peters Realty (Ralph Peters) of his private residence to a black family and his continued residency on the same street at a newly acquired home would further "mitigate" [sic militate] against charges of racial discrimination.

The district court's holding that the complaint and the evidence presented at the injunction hearing were insufficient to sustain a class action was premature. Rule 23(a) Fed.R.Civ.P. provides:

*(a) Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses

of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The district court cited Cash v. Swifton, 434 F.2d 569 (6th Cir. 1970), and Pegues v. Bakane, 445 F.2d 1140 (5th Cir. 1971) to support its finding that the plaintiff had failed to meet these prerequisites for maintaining a class action. Since these two cases dismissed class actions because of a failure of the plaintiff to meet the numerosity requirement of Rule 23(a), we must assume that this was the same flaw that the district court in this case found in the plaintiff's action. In civil rights cases of the nature of the present case, the numerosity requirement is usually satisfied by the showing of a colorable claim by the named plaintiff who is a member of a larger class having potentially similar claims. *See* Wright and Miller, 7 Federal Practice and Procedure Sec. 1762 (1972). Although the district court has broad discretion in determining whether a particular action complies with Rule 23(a), by meeting all four requirements, the application of these requirements should not be so strictly applied that the policies underlying class actions would be undermined. The plaintiff made allegations that she was discriminated against because of her race. She also alleged that there are others of her race "who are, have been or will be seeking housing" at the defendants' property.

■■■ It is true that an action is not maintainable as a class action merely because it is designated as such in the pleadings. *See generally*, 3B Moore, Federal Practice, Par. 23.02–2, 230.5 (2d 1969). Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide. Huff v. N. D. Cass Co. of Alabama, 485 F.2d 710 (5th Cir. 1973). The district court conducted a preliminary hearing focused on the requested preliminary injunctive relief. The parties should be afforded an opportunity to present evidence on the maintainability of the class action. In making this determination the district court must in addition to applying the prerequisites of 23(a) ascertain if the class comes within one of the three categories of Rule 23(b). In this case, from the pleadings and the nature of the case itself, the plaintiff's class appears to be, if it qualifies as a class at all, a 23(b)(2) class. Rule 23(b)(2) provides:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

In attempting to define a (b)(2) class, it should be noted that the category may in some instances be quite broad in scope. The nature of the primary relief sought in this category, injunctive or declaratory relief, does not require that the class be as narrowly confined as under either (b)(1) or (b)(3). Of course some or all of the members of a (b)(2) class may seek additional relief, for example, monetary damages, as the present plaintiff has done. When monetary damages are sought the reasons that district courts may see fit to confine the class more narrowly are, first, to protect the defendant in preparing his defenses against various damage claims, and second, to make the disposition of the class action more manageable since the evidence as to individual claims may vary widely in scope and character. If both injunctive or declaratory relief, and monetary damages are sought, it is permissible under Rule 23(c)(4) to have sub-classes. All sub-classes must meet the same requirements as a class. But the practical differences between the members of the class seeking injunctive or declaratory relief and those members seeking monetary damages in addition, may make the division into sub-classes

necessary in some cases. *See* Wright and Miller, 7 Federal Practice and Procedures Sec. 1790 (1972). Thus, even if a plaintiff may be unable to state a sub-class for monetary damages with the proper specificity, it may be possible to specify a class for injunctive relief. *See* Korn v. Franchard Corp., 456 F.2d 1206 (2d Cir. 1972).

 Additionally, when determining the maintainability of a class action, the district court must confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits. As the Supreme Court recently stated in Morton Eisen, etc. v. Carlisle & Jacquelin et al., 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974):

> "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. . . . . In short, we agree with Judge Wisdom's conclusion in Miller v. Mackey International, 452 F.2d 424 (CA5 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action:
>
> > 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' *Id.*, at 427."

As we shall see later, the district court's decision that the named plaintiff had not been discriminated against was decided by exclusive reliance on evidence which, standing alone, we deem to be insufficient to rebut the plaintiff's case on the issue of discrimination against her. We are concerned that the decision on the merits of the plaintiff's personal claim of discrimination strongly influenced the district court's decision on the maintainability of the class action.

 The district court's conclusion that the plaintiff's motion for injunctive relief was mooted by the defendants' offer to rent the suite to her is predicated on the assumed absence of a party to the action who would benefit from such relief. The district court apparently reasoned that the plaintiff is entitled to pray for relief for herself, but not for others who it assumed were not properly before it. But mooting the named plaintiff's personal claim for injunctive relief, does not preclude this form of relief if, as we have decided, the issue of the maintainability of a class action is still open. To allow a defendant to moot a "fair housing" class action by making concessions to the named plaintiffs would thwart the purposes of this important type of litigation.

The district court in finding that the defendants did not discriminate against the plaintiff relied upon statistical data concerning the racial distribution of the defendants' tenants and the seemingly unbiased attitude toward blacks on the part of the corporation's controlling officer.

The Fair Housing Act of 1968, 42 U.S.C. Sec. 3604, provides in pertinent part:

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, or national origin.
>
> \* \* \* \* \* \*
>
> (d) To represent to any person because of race, color, religion, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

 In cases construing this statute, statistics have often been used to aid in establishing the existence of racial discrimination. *See* Otero v. New York City Housing Authority, 484 F.2d 1122 (2d Cir. 1973), and Johnson v. Jer-

ry Pals Real Estate, 485 F.2d 528 (7th Cir. 1973). This same use of statistics is prevalent in cases involving, inter alia, school segregation and employment discrimination. In Parham v. Southwestern Bell Telephone, 433 F.2d 421, 426 (8th Cir. 1970), an employment discrimination case, the court stated:

> In cases concerning racial discrimination, 'statistics often tell much and the Courts listen.' State of Alabama v. United States, 304 F.2d 583, 586 (5th Cir.) aff'd per curiam, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962).

Also, under Rule 42(a), the maximum admissibility rule of the Federal Rules of Civil Procedure, the use of statistics to help defend against charges of racial discrimination would appear to be not impermissible.

 The district court, in examining the percentage of minority occupancy of the defendants' apartments, noted:

> A cursory investigation would have revealed that the apartment house had one suite leased to and occupied by a black woman, one suite leased to and occupied by a Japanese family and one suite leased to and occupied by a Pakistani geltleman (sic).

The court then concluded that this 23% minority occupancy would "discredit" allegations of discrimination by the defendants. This approach in our view represents a misapprehension of the effect of statistics pertaining to minority occupancy. It is a well known historical fact that blacks in our country have suffered from racial discrimination in many respects distinguishable in kind and degree from other racial minorities. Where in a case, such as this, the issue involves alleged discrimination against blacks only, statistical percentages including other minorities in the composite picture must be viewed with this distinction in mind. This the district court did not do as it obviously gave too much weight to the 23% minority figure as a factor favorable to the defendants' case. We do not hold that evidence respecting occupancy by other racial minorities was not admissible in the present case. Our holding is that such evidence should be weighed along with all other relevant evidence in determining the basic issue of black minority discrimination. Such evidence, though relevant, was not conclusive that no racial discrimination existed. So too as to evidence bearing upon the conduct and attitude of the Realty Company's operating officer. Such tangential evidence is to be weighed in light of the total record and not treated as conclusive.

The district court was confronted with conflicting testimony from witnesses and varying inferences touching upon the issue of discrimination as to blacks. Its duty was to resolve the conflicts and to adopt the more reasonable conclusions from all relevant evidence. This function it did not perform. Rather it selected isolated items of evidence and by over-emphasizing them failed to consider or evaluate other relevant evidence.

Accordingly, the judgment of the district court is reversed and the action is remanded to that court for further proceedings consistent with this opinion.