**HISPANICS UNITED OF DUPAGE COUNTY, et al., Plaintiffs,**

v.

**VILLAGE OF ADDISON, ILLINOIS, et al., Defendants.**

No. 94 C 6075.

United States District Court,
N.D. Illinois,
Eastern Division.

April 20, 1995.

Edward Arthur Voci, Chicago, IL, for Hispanics United of Dupage County, Leadership Council for Metropolitan Open Communities, Hispanic Council.

Matthew J. Piers, Jonathan A. Rothstein, Charles James Holley, Jennifer Louise Fischer, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, IL, Theresa Ann Amato, Elmhurst, IL, James Gerard Bradtke, Jennifer Kay Soule, Soule & Bradtke, Chicago, IL, for Leopoldo Alcaraz, Debra J. Cagle, John J. Cagle, Marcella Carrillo, Rojelio Carrillo, Carl Conti, Maudie Conti, Rita Gonzalez, Oralia Herrera, Martin Hurtado, Camille Husby, Marvin Husby, Estela Ibarra, Francisco Ibarra, Salbador Ibarra, Reginaldo Ortega, David Sanchez, Jose Angel Rivera, Maria Torres, Elisa Vargas, Marcelino Vargas, Jose Villanueva, and on behalf of all other persons similarly situat-

ed, Amparo Rojas, Jose Rojas, Jesus Rojo, San Juan Rojo, Guadalupe Solis.

Norma Jean Guess, Barry L. Moss, Daniel C. Shapiro, Moss & Bloomberg, Ltd., Bolingbrook, IL, Roger K. O'Reilly, James L. DeAno, Thomas R. Weiler, O'Reilly, Cunningham, Norton & Mancini, Stuart David Gordon, Zukowski, Rogers, Flood & McArdle, Chicago, IL, for Village of Addison, Ill., Addison Bd. of Trustees, Anthony Russotto, Angelo Chrysogelos, Larry Hartwig, Don Lapato, Sylvia Layne, Harry Theodore, Richard Veenstra, individually and in their capacities as members of Addison's Bd. of Trustees.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Organizational plaintiffs Hispanics United of Dupage County ("Hispanics United"), Leadership Council for Metropolitan Open Communities ("Leadership Council"), and Hispanic Council, and the individual plaintiffs [1] (collectively "plaintiffs") on behalf of themselves and all other persons similarly situated, sue defendants Village of Addison, Illinois ("Addison" or "the Village"), Addison Board of Trustees, and Anthony Russotto, Angelo Chrysogelos, Larry Hartwig, Don LaPato, Sylvia Layne, Harry Theodore, and Richard Veenstra, in their capacities as members of Addison's Board of Trustees (collectively "defendants"), alleging housing discrimination on the basis of national origin and actions in perpetuation of segregation, under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq., and under 42 U.S.C. §§ 1981, 1982, 1983. The essence of plaintiffs' five-count amended class action complaint (the "Complaint") is that Addison's proposed redevelopment plans—which allegedly destroy the two largest Hispanic residential communities in the Village—intentionally discriminate against Hispanics and have a disparate adverse impact on Addison's Hispanic Community. The Complaint seeks declaratory and injunctive relief and monetary damages. Plaintiffs' motion for class certification is presently before the Court.

## BACKGROUND [2]

### The Dispute

According to the 1980 decennial census, the Village of Addison had a Hispanic population of 5.8%. By 1990, Addison's Hispanic population had grown to approximately 13.4% and growth of Addison's Hispanic community continues. The two neighborhoods wherein the majority of Addison's Hispanic population resides—Green Oaks and Michael Lane—contain privately-owned, low density, low-rise, multi-family dwellings. A large percentage of the buildings are owner-occupied. Green Oaks had a total of 187 dwelling units prior to the demolition by the Village in September and October of 1994 of eight four-apartment buildings. Prior to these demolitions, approximately 60% of those dwelling units were occupied by Hispanics, approximately 15% were occupied by whites, and about 7% were occupied by African–Americans or Asians. A large majority of the remaining residents of the Green Oaks neighborhood are Hispanic. Michael Lane has approximately 620 residential apartments and more residents than Green Oaks. A large majority (estimated to be as high as 75% or more) of the residents of Michael Lane are Hispanic. The buildings in these neighborhoods are in compliance with the zoning code and have generally been maintained in compliance with the housing code.

---

1. The twenty-nine individual plaintiffs are: Leopoldo Alcaraz, Debra J. Cagle, John J. Cagle, Marcella Carrillo, Rojelio Carrillo, Carl Conti, Maudie Conti, Rita Gonzalez, Oralia Herrera, Martin Hurtado, Camille Husby, Marvin Husby, Emilia Ibarra, Estela Ibarra, Francisco Ibarra, Salbador Ibarra, Reginaldo Ortega, David Sanchez, Jose Angel Rivera, Amparo Rojas, Jose Rojas, Jesus Rojo, San Juan Rojo, Guadalupe Solis, Maria Torres, Elisa Vargas, Marcelino Vargas, Elisa Vargas, Marcelino Vargas, Jose Villanueva, and Maria Villanueva.

2. When evaluating a motion for class certification, the Court accepts all well-pleaded facts as true. See Scholes v. Tomlinson, 145 F.R.D. 485, 488 (N.D.Ill.1992); see also Hardin v. Harshbarger, 814 F.Supp. 703, 706 (N.D.Ill.1993) ("the allegations made in support of certification are taken as true"); Allen v. City of Chicago, 828 F.Supp. 543, 550 (N.D.Ill.1993) (same). Accordingly, the following recitation of background facts is derived from the Complaint and the facts alleged in plaintiffs' memorandum in support of class certification.

The defendants are aware that the Green Oaks and Michael Lane neighborhoods are predominantly Hispanic and contain the largest Hispanic residential communities in Addison.

In January of 1994, the defendants proposed a tax increment financing ("TIF") redevelopment project entitled the "Army Trail/Mill Road Redevelopment Plan and Project" (the "Green Oaks TIF"). After a statutorily required public hearing on the project was held on March 4, 1994, the Village Board of Trustees approved the Green Oaks TIF and adopted an ordinance providing for the project on March 21, 1994. The boundaries of the area slated for redevelopment under the Green Oaks TIF include the Green Oaks neighborhood. As part of its TIF ordinance for Green Oaks, the Village has found the neighborhood to be "blighted" within the meaning of the Tax Increment Allocation Redevelopment Act (the "Act"), 65 ILCS 5/11–74.4–1 et seq., which authorizes municipal TIF redevelopment programs.[3] The TIF plan states that the improved properties within the Green Oaks TIF district are "considered blighted due to their aged condition, depreciation of physical maintenance, deleterious land use, inadequate utilities, obsolescence, code violations, excessive vacancies and an absence of effective community planning for the area." Am.Compl., Ex. A, Green Oaks TIF Plan at 5. The plaintiffs allege that none of these factors are actually present in the Green Oaks neighborhood and that their inclusion in the plan is a pretext for discrimination.

Plaintiffs further allege that the defendants specifically devised the boundaries of the Green Oaks redevelopment area to include the predominantly Hispanic neighborhood and to exclude adjacent, comparably improved, comparably dense, and predominantly white neighborhoods. For instance, the boundaries of the Green Oaks TIF district exclude a residential area adjacent to Green Oaks containing the Chateau Mill Condominiums. The Chateau Mills Condominiums consist of two 68–unit buildings, have a unit density greater than Green Oaks or Michael Lane, and are predominantly white-occupied. Also excluded from the Green Oaks TIF district is a residential area adjacent to Green Oaks called Stephens Drive, which contains twelve 12–unit apartment buildings with a unit density greater than Green Oaks or Michael Lane, and which is predominantly white-occupied.[4]

The Green Oaks TIF plan provides that after redevelopment, the Green Oaks neighborhood will no longer be residential, thus eliminating an entire neighborhood of affordable housing. Since the TIF district was approved, the defendants have initiated efforts to purchase buildings located in the Green Oaks neighborhood and have filed condemnation suits against those owners who refused to sell their buildings. The Village has already acquired and demolished at least eight buildings located in the Green Oaks neighborhood; and, condemnation suits affecting at least eight additional buildings containing at least thirty-two dwelling units are in progress. The residents of the buildings have been forced to vacate their homes and relocate. Despite the fact that Green Oaks comprises only a portion of the Green Oaks TIF plan area, no other property acquisition or demolition attendant to the TIF district has occurred. The defendants have only initiated condemnation proceedings involving buildings in the Green Oaks neighborhood. Plaintiffs allege that the defendants have included the Green Oaks neighborhood in the

3. Under § 11–74.4–3 of the Act, residential buildings or improvements may be deemed blighted if a combination of five or more of the following factors renders the improved area "detrimental to the public safety, health, morals or welfare": "age; dilapidation; obsolescence; deterioration; illegal use of individual structures; presence of structures below minimum code standards; excessive vacancies; overcrowding of structures and community facilities; lack of ventilation, light or sanitary facilities; inadequate utilities; excessive land coverage; deleterious land use or layout; depreciation of physical maintenance; [or] lack of community planning[.]"

4. The pleasant View Condominiums and the Mill Road apartment buildings—two predominantly white-occupied residential complexes adjacent to Green Oaks—are contained within the Green Oaks TIF boundaries; however, plaintiffs allege that the Village has no plans to acquire, condemn, or demolish these buildings pursuant to its redevelopment plan.

TIF district in order to eliminate a primarily Hispanic neighborhood. Plaintiffs also allege that defendants' conduct with respect to the Green Oaks TIF project has had, and will continue to have, a greater adverse effect on housing opportunities for Hispanics than for non-Hispanics.

A second TIF redevelopment project—affecting the Michael Lane neighborhood (the "Michael Lane TIF")—was proposed in May and July of 1994. After a statutorily required public hearing was held on September 6, 1994, the project was approved, and on October 3, 1994 an ordinance providing for the Michael Lane TIF was approved by the Village Board of Trustees. The plaintiffs' allegations with respect to the Michael Lane TIF substantially parallel the allegations concerning the Green Oaks TIF. In particular, plaintiffs allege that defendants deemed the improved properties within the Michael Lane TIF area to be "blighted" on a pretextual basis. Also, plaintiffs allege that defendants have devised the Michael Lane TIF district to specifically include a predominantly Hispanic neighborhood and dwellings, and to specifically exclude predominantly white dwellings and neighborhoods. Finally, plaintiffs allege that defendants included the Michael Lane neighborhood in the TIF district in order to eliminate a primarily Hispanic neighborhood and that the project has had, and will continue to have, a greater adverse effect on housing opportunities for Hispanics than non-Hispanics.

*The Parties*

Hispanics United is an Illinois not-for-profit corporation whose corporate purpose includes promoting and enhancing the Hispanic culture in Addison. Similarly, Hispanic Council—also an Illinois not-for-profit corporation—has, as part of its corporate purpose the assistance of the DuPage County Hispanic community. The corporate purposes of both of these organizations include promoting the equal availability of rights guaranteed by the United States and the State of Illinois and "counteract[ing] and eliminat[ing] discriminatory housing practices, and the right of individuals to enjoy the benefits of living in an integrated community." Am.Compl. ¶¶ 4, 6. Leadership Council is also an Illinois

not-for-profit corporation whose purpose is to promote open housing in the Chicago metropolitan area. Its activities include fair housing centers that provide referral services, housing and financial counseling to minority homeseekers and a legal action program that investigates housing discrimination complaints and provides legal counseling to assist minorities exercise their rights under fair housing laws. *Id.* ¶ 5.

With one exception, the individual plaintiffs are all persons who have owned or leased residential property in either the Green Oaks neighborhood or the Michael Lane neighborhood since January 1994. Although there are several variants, the theme uniting the plaintiffs is simple: The defendants' redevelopment plans threaten each of the plaintiffs with either the loss of their home or property, or the loss of the benefits of living in an integrated community. In some instances, the defendants have informed the particular individually named plaintiffs that the Village may acquire their property by condemnation and demolish it as part of either the Green Oaks TIF or the Michael Lane TIF. In other instances, the defendants have already instituted condemnation proceedings, acquired the property and demolished it. As a result of the Village's actions in furtherance of the Green Oaks and Michael Lane TIF projects, the plaintiffs have been (or will be) forced to relocate—losing not only their homes but also the enjoyment of the integrated community within which they have lived. The sole exception to the foregoing, is plaintiff Jose Angel Rivera who is a Hispanic resident owner of a single family home in a predominantly white area adjacent to the Michael Lane neighborhood. Although not threatened with the loss of his property, Mr. Rivera wishes to continue to enjoy the benefits of living in proximity to an integrated community.

Plaintiffs move for certification of the following proposed class under Federal Rule of Civil Procedure 23(b)(2):

> [A]ll others similarly situated who have owned or rented dwellings in the Village of Addison ("Addison") on or subsequent to January 1, 1994 and who have been, will be

and/or continue to be, adversely affected by the acts, policies, and practices of the Defendants and their agents.

Am.Compl. ¶ 26.[5]

## ANALYSIS

■ The party seeking class certification bears the burden of establishing that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993); *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984). In order to establish that class certification is appropriate, the party must satisfy all four requirements specified in Federal Rule of Civil Procedure 23(a); "that is, the plaintiff must meet the prerequisites of numerosity, commonality, typicality and adequacy of representation." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993) (internal quotation marks omitted). "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police Ass'n*, 7 F.3d at 596; *Harriston*, 992 F.2d at 703. Even if the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action only if it satisfies one of the conditions of Rule 23(b) as well. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977). In this case, plaintiffs seek certification under Rule 23(b)(2), which provides:

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition

. . . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

FED.R.CIV.P. 23(b)(2).[6] The Court finds that this action falls squarely within the reach of Rule 23(b)(2); accordingly, we turn our attention to whether the prerequisites of Rule 23(a) are met.

■ Before addressing the four explicit prerequisites set out in Rule 23(a) (i.e., numerosity, commonality, typicality, and adequacy of representation), the Court must first address an implicit requirement of Rule 23(a), namely, that an identifiable class exists—the so-called "definiteness" requirement. *See Alliance to End Repression*, 565 F.2d at 977. As the court stated in *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394 (N.D.Ill.1987):

Before a class can be certified, the party seeking certification must show that an identifiable class exists. An identifiable class exists if its members can be ascertained by reference to objective criteria. A class description is insufficient, however, if membership is contingent on the prospective member's state of mind.

*Id.* at 397 (citations omitted). Further, the Seventh Circuit has stated that the scope of a class may be defined by reference to the defendants' conduct. *Alliance to End Repression*, 565 F.2d at 978.

■ In the present case, defendants oppose plaintiffs' motion for class certification, contending that the description of the class as proposed by plaintiffs renders the class unascertainable. Specifically, defendants maintain that "[w]hether an individual has been adversely affected by the allegedly illegal activities of the defendants ... depends in large part upon the individual's state of mind." Defs.' Resp. at 3. The Court disagrees.

There are effectively two groups of plaintiffs subsumed within the class definition proposed by the plaintiffs: First, there are those plaintiffs that have been or are threatened to

---

5. In their Memorandum in Support of Motion for Class Certification, plaintiffs restate the proposed class—adding a little precision—as follows:

All individuals who have owned or rented dwellings in the Village of Addison on or subsequent to January 1, 1994 and who have been, will be and/or continue to be, adversely affected by the *segregative and discriminatory* actions, policies, and practices of the Defen-

dants and their agents as alleged in the Plaintiffs' Amended Complaint.

Mem.Supp.Mot.Class Cert. at 2–3 (emphasis added).

6. Because plaintiffs invoke only Rule 23(b)(2), this Court's discussion is similarly restricted to that subsection.

be displaced or who have suffered other economic loss as a result of defendants' redevelopment plans. The second group consists of those prospective plaintiffs who are deprived of the benefits of living in an integrated community as a result of defendants' redevelopment plans. It is apparent that defendants' "definiteness" argument is aimed at the class definition to the extent that it is broad enough to encompass the second group. For instance, defendants argue, "The plaintiff [Jose] Angel [Rivera] alleges that he is damaged by the threatened deprivation of the benefits he experiences from living in an integrated area. Although this allegation of injury may be sufficient to provide standing to this plaintiff, the court cannot assume that every resident living in the Village of Addison during the relevant time period has suffered the same injury." *Id.* We read this passage as suggesting that, under the defendants' view, one is only injured by the defendants' allegedly intentional plan to rid Addison of a significant proportion of its Hispanic community if one subjectively experiences a benefit from living in an integrated community. Under the defendants' argument, white racists, for example, should not be encompassed within the plaintiff class because they presumably perceive no benefit from living in an integrated community.

We do not find this logic compelling. To begin with, we note that the defendants' reference to standing is plainly a reference to *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), in which the Supreme Court held that a white tenant had standing under the Civil Rights Act of 1968, 42 U.S.C. § 3610(a), to sue the owner of an apartment complex for allegedly discriminating against nonwhites on the basis of race. In reaching this holding, the Supreme Court found that individual injury or injury in fact was sufficiently alleged: "the alleged injury to existing tenants by exclusion of minority persons from the apartment complex is the loss of important benefits from interracial associations." *Id.* at 209–10, 93 S.Ct. at 367. The Court observed that, "[w]hile members of minority groups were damaged the most from discrimination in housing practices, the proponents of the legislation emphasized that those who were

not the direct objects of discrimination had an interest in ensuring fair housing, as they too suffered." *Id.* at 210, 93 S.Ct. at 367. The Court quoted Senator Javits, who, in supporting the bill, stated that "the whole community" is the victim of discriminatory housing practices. *Id.* at 211, 93 S.Ct. at 367–68. In a somewhat different yet relevant vein, the United States Supreme Court has also held that the negative societal impacts of segregation are so significant that they can justify overturning remedial racial gerrymandering because segregation "threatens to carry us further from the goal of a political system in which race no longer matters—a goal that the Fourteenth and Fifteenth Amendments embody, and to which the Nation continues to aspire." *Shaw v. Reno,* —— U.S. ——, ——, 113 S.Ct. 2816, 2832, 125 L.Ed.2d 511 (1993).

In the present case, plaintiffs also complain of the loss of important benefits from living in an integrated community. This "loss" is multifaceted involving not only lost opportunities for social intercourse and the advantages that accrue therefrom but also lost opportunities for business and professional advantages. These lost opportunities are simply not mental states of the plaintiffs. We find nothing in the nature of this injury to support the defendants' contention that its existence depends upon subjective considerations such as were involved in *Simer v. Rios,* 661 F.2d 655 (7th Cir.1981), cited by defendants. In *Simer,* the complaint defined class members as individuals eligible for federal assistance but who were denied assistance *or who were discouraged* from seeking such assistance because of the existence of certain allegedly invalid regulations. *Simer,* 661 F.2d at 669. The Seventh Circuit found that, in denying class certification, the district court properly took into consideration the difficulty of identifying potential class members where the class definition included, *inter alia,* reference to the individual plaintiffs' state of mind. *Id.* at 669–71.

In the instant case, we find that the plaintiffs' allegations that defendants have intentionally adopted redevelopment plans with the intention of eliminating a substantial proportion of Addison's Hispanic community—

thereby transforming the Village from an integrated community to a segregated one—and that as a result plaintiffs have lost, or will lose, the benefits of living in an integrated community, do not involve an injury requiring examination of the individual plaintiffs' state of mind. Accordingly, we reject defendants' argument that the proposed class in this action is unascertainable. We now proceed to consider Rule 23(a)'s four explicit prerequisites.

### 1. Numerosity

■ Rule 23(a)'s first express requirement is that the class be "so numerous that joinder of all members is impracticable." FED. R.CIV.P. 23(a)(1). In making this determination, "the court is entitled to make common sense assumptions." *Patrykus v. Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill.1988); *see also In re VMS Sec. Lit.,* 136 F.R.D. 466, 473 (N.D.Ill.1991). The defendants do not contend that the numerosity requirement is not met in this case. Moreover, the Court's review of the amended complaint and the materials submitted in connection with the motion for class certification adequately support the conclusion that this requirement is met. The amended complaint indicates that Green Oaks and Michael Lane have approximately 187 and 620 dwelling units, respectively. Am.Compl. ¶¶ 36, 37. Thus there are at least approximately 807 dwelling units that stand to be eliminated by the Village's redevelopment plans. Even if the Court were to make the conservative assumption that each dwelling unit is occupied by only one resident, it is clear that the number of potential plaintiffs could reach several hundred in number.[7] We find this number of potential plaintiffs to be so large in number as to make joinder impracticable thereby satisfying the numerosity requirement of Rule 23(a).

### 2. Commonality

■ Rule 23(a)(2) requires that there be questions of law and fact common to the class. A common nucleus of operative fact is usually enough to satisfy the commonality

requirement. *Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir.1992) (citing *Franklin v. City of Chicago,* 102 F.R.D. 944, 949–50 (N.D.Ill. 1984)). Indeed, as noted in *Gomez:*

> "[t]here need only be a single issue [of law or fact] common to all members of the class," (*Edmondson v. Simon,* 86 F.R.D. 375, 380 (N.D.Ill.1980)), and differences in individual class members' cases concerning damages or treatments will not defeat commonality. *Tonya K. v. Chicago Board of Education,* 551 F.Supp. 1107, 1110 (N.D.Ill.1982). "Especially in the context of Rule 23(b)(2) class actions, distinct factual contexts will be unified under a common claim for equitable relief." *Cristiano v. Courts of Justices of the Peace,* 115 F.R.D. 240, 247–48 (D.Del.1987).

117 F.R.D. at 399. Where "broad discriminatory policies and practices constitute the gravamen of a class suit, common questions of law or fact are necessarily presented." *Midwest Community Council v. Chicago Park Dist.,* 87 F.R.D. 457, 460 (N.D.Ill.1980).

■ Here, again, defendants do not challenge the motion for class certification on typicality grounds and we find that that requirement is met. The central question to plaintiffs' action here is whether the defendants' redevelopment plans were adopted with discriminatory intent or effect. The facts bearing on that question constitute a common nucleus of operative facts out of which this action derives. The question of discriminatory intent or effect as well as the nucleus of operative facts bearing on that question present questions of law and fact common to the class. Accordingly, we find that the commonality requirement is met.

### 3. Typicality

Rule 23(a)(3) requires that the representative plaintiffs' claims be "typical" of those of the class as a whole. The Seventh Circuit explained the typicality requirement in *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983), as follows:

> of their residences, but rather on the fact that the defendants' conduct deprives them of the advantages of living in a racially integrated community.

---

**7.** This estimate does not even take into account the number of plaintiffs who base their claim not on the fact that they are being forced to relocate as a result of the defendants' planned demolition

[The typicality requirement] primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."

(quoting H. NEWBERG, CLASS ACTIONS § 115(b) at 185 (1977)). The court went on to note that factual identity between the claims of the named plaintiffs and the other class members is not necessary to satisfy the typicality requirement and that "similarity of legal theory may control even in the face of differences of fact." *Id.; accord Retired Chicago Police Ass'n,* 7 F.3d at 597.

█ Once again, defendants do not challenge the motion for class certification on typicality grounds. Even if they did, the challenge would be unavailing for we find that the named plaintiffs' claims "have the same essential characteristics as the claims of the class at large." The legal theory underlying the named plaintiffs' claims is that defendants have adopted the challenged redevelopment plans with the intent or effect of discriminating against Hispanics and perpetuating segregation in housing. The same legal theory underlies the claims of the class as a whole. Moreover, virtually all of the named plaintiffs are property owners and property renters who have been or will be adversely affected by the defendants' allegedly discriminatory conduct in adopting (and acting in furtherance of) the redevelopment plans described in the amended complaint. Accordingly, we find that the typicality requirement is met.

### 4. *Adequacy of Representation*

█ Rule 23(a)(4)'s adequacy of representation requirement has two elements: " 'the adequacy of the named plaintiff's counsel[8], and the adequacy of representation provided in protecting the different, separate, and distinct interest[s]' of the class members." *Retired Chicago Police Ass'n,* 7 F.3d at 598 (quoting *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986) (en banc)). Thus, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Fitzsimmons,* 805 F.2d at 697.

█ Defendants contend that the named plaintiffs do not adequately represent the interests of the class as a whole for two principal reasons. First, defendants argue that the relief sought by plaintiffs (including, *inter alia,* a declaration that the acts complained of constitute a violation of the Fair Housing Act, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. §§ 1981, 1982, 1983; and, an injunction enjoining defendants from discriminating on the basis of national origin) does not necessarily benefit all members of the proposed class. Specifically, defendants contend that enjoining the proposed redevelopment plans will not necessarily benefit owners and renters in the Village whose homes will not be condemned or demolished. *See* Defs.' Resp. at 5. Defendants' implicit argument is that Addison residents living outside the Green Oaks and Michael Lane neighborhoods, both within and without the TIF districts, whose homes will not be condemned or demolished stand to benefit from the Village's planned "regeneration and rehabilitation" of the TIF districts. *Id.*

We find the potential conflict suggested by the defendants to be too remote and speculative to defeat class certification. Indeed, defendants' own statement of their argument suggests the speculative nature of the conflict they envision: "[t]he homeowners and tenants living outside the Green Oaks and Michael Lane neighborhoods, both within and without the TIF districts, *could very well benefit* from redevelopment of the areas." *Id.* at 7. *Chicago Retired Police Ass'n,* which is cited by defendants, is distinguishable precisely because in that case the scope of the proposed class included mem-

---

**8.** Defendants do not challenge the adequacy of plaintiffs' counsel. Moreover, this Court's review of plaintiffs' counsel's litigation experience satisfies it that counsel will be more than adequately capable of ably representing the class and has no current bias or conflict with respect to any member or "subgroup" within the class.

bers who stood to lose a concrete benefit (achieved by virtue of a settlement agreement from a related action) if the class action succeeded. *See Chicago Retired Police Ass'n,* 7 F.3d at 598.

Although this Court is entirely cognizant of the Seventh Circuit's admonition that "[t]he problem of actual and potential conflicts is a matter of particular concern [where the] proposed certification [is] under Federal Rule of Civil Procedure 23(b)(2) which does not allow class members to opt out of the class action," *id.,* we do not believe that this consideration compels the denial of class certification regardless of how speculative the hypothesized conflict might be. Whether residents of Addison whose property is not slated for condemnation or demolition ultimately benefit from the Village's redevelopment plans is dependent on myriad factors that can not be forecast with any degree of certainty whatsoever. Therefore, we decline to accept defendants' suggestion that the interests of these individuals diverge from those of the named plaintiffs in such a manner as to defeat initial certification.[9]

Defendants also argue that "homeowners and tenants who will not be displaced would not suffer the same economic injuries alleged by all but one of the individual plaintiffs in the present case." Defs.' Resp. at 7. However, it must be borne in mind that the principal relief sought by the named plaintiffs is declaratory and injunctive. The fact that some plaintiffs (i.e., those who have been displaced) may also be entitled to monetary damages does not in and of itself create a conflict of interest between those plaintiffs and others whose relief is limited to declaratory or injunctive relief. Defendants cite no authority to the contrary and we are aware of none. In any event, the purported conflict, if there be any, is substantially out-weighed by the class members' overriding common interest in establishing that defendants adopted the subject redevelopment plans with the intent or effect of perpetuating segregation and discriminating against Hispanics. Moreover, as defendants concede, there is one named plaintiff who lives outside of Green Oaks and Michael Lane and whose property is not threatened by condemnation or demolition. One named plaintiff is all that is necessary. *Hohmann v. Packard Instrument Co.,* 399 F.2d 711, 714 (7th Cir. 1968).

In the final analysis, defendants have not identified any actual or threatened conflicts that would justify a finding that the named plaintiffs do not adequately represent the interests of the class as a whole. Stated affirmatively, the Court finds that the named plaintiffs do, in fact, adequately represent the interests of the class as a whole. Accordingly, the Court finds that the requirement of adequacy of representation is met.

The Court expressly notes, however, that under Rule 23(c)(1), the Court's order today certifying the proposed class is conditional and may be altered or amended before the decision on the merits. Should it appear in the course of litigation that the class actually subsumes members with divergent interests, the Court shall not hesitate to exercise the authority it retains to create appropriate subclasses represented by separate counsel or take whatever other measures are necessary to ensure fairness of representation.

## CONCLUSION

Having determined that all of the prerequisites of Rule 23(a) are satisfied and that the action also meets the conditions of Rule 23(b)(2), the Court hereby grants plaintiffs' motion for class certification. This action

---

9. Moreover, we note that while all of Addison's residents *may* stand to benefit from *some* redevelopment—and hence may have a unified interest in seeing *some* redevelopment occur, defendants have made no showing whatsoever that the group hypothesized to have conflicting interests with those of the named plaintiffs has any particular interest in the redevelopment plans challenged by the named plaintiffs. Further, it can hardly be questioned that those individuals identified by defendants as having interests diverse from those of the named plaintiffs share with the named plaintiffs an interest in enjoying the benefits of interracial association. And, although they may be satisfied with the Village's redevelopment plans, that satisfaction "is not relevant ... because a judge may not refuse to certify a class simply because some class members may prefer to leave the violation of their rights unremedied." *Martino v. McDonald's Sys., Inc.,* 81 F.R.D. 81, 85 (N.D.Ill.1979).

may be maintained as a class action with the class defined, as in plaintiff's motion and memorandum in support of class certification as follows:

> All individuals who have owned or rented dwellings in the Village of Addison on or subsequent to January 1, 1994 and who have been, will be and/or continue to be, adversely affected by the segregative and discriminatory actions, policies, and practices of the Defendants and their agents as alleged in the Plaintiffs' Amended Complaint.