Annetta MILLER, Everett Miller, and The South Suburban Housing Center, and United States of America, Plaintiffs,

v.

SPRING VALLEY PROPERTIES, Rivercrest Limited Partnership, Koeli Goel, Dr. Naresh Goel, Michael Langevin and Wanda Buchanan, Defendants.

Nos. 99–2212, 99–2280.

United States District Court,
C.D. Illinois,
Danville/Urbana Division.

Aug. 1, 2001.

Miriam N. Geraghty, Jeffrey L. Taren, Kinoy, Taren & Geraghty, P.C., Chicago, IL, for Plaintiffs.

James A. Lewis, Office of U.S. Attorney, Springfield, IL, for Plaintiff USA.

Jeffrey S. Goldman, Allison C. Blakley, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Defendants.

## ORDER

McCUSKEY, District Judge.

On October 21, 1999, Plaintiffs Annetta Miller, Everett Miller and the South Suburban Housing Center (Private Plaintiffs) filed their First Amended Complaint (# 15) alleging violations of the Fair Housing Act of 1968 (42 U.S.C. § 3601 et. seq.) and the Civil Rights Act of 1866 (42 U.S.C. §§ 1981 and 1982).[1] Plaintiffs allege that Defendants engaged in a practice of discriminating against African Americans in the rental of housing in several communities in Vermilion County, Illinois. This matter is now before the court for ruling on Private Plaintiffs' Motion for Class Certification (# 52). Following a careful review of the arguments submitted by the parties, Private Plaintiffs' Motion for Class Certification (# 52) is GRANTED.

---

1. This case has been consolidated with Civil Case No. 99–2280. In that case, the United States of America filed suit under the Fair Housing Act against Defendants as a result of the same allegations presented in Private Plaintiffs' First Amended Complaint.

## I. BACKGROUND

The allegations in Plaintiffs' First Amended Complaint revolve around several properties located in the Danville area of Illinois and managed by Defendant Spring Valley Properties (Spring Valley). These properties are owned by Defendant Rivercrest Limited Partnership (Rivercrest). Spring Valley leases between 174 and 210 units in at least three different communities in Vermilion County. Dr. Naresh Goel (Naresh) is an owner of both Spring Valley and Rivercrest. Defendant Koeli Goel (Koeli) is an owner of Rivercrest and served as a manager for Spring Valley. Defendant Michael Langevin (Langevin) was an employee of Spring Valley and was responsible for returning telephone calls of prospective tenants seeking apartments from Spring Valley, taking applications from prospective tenants, and showing available apartments. Wanda Buchanan (Buchanan) was also an employee of Spring Valley with similar job responsibilities to Langevin.

Plaintiffs allege that Annetta Miller (Annetta), an African American, inquired about renting an apartment at Defendants' Sonny Lane apartment complex. According to the complaint, Annetta contacted Langevin about renting a one or two bedroom apartment at Sonny Lane for herself, and after her marriage, for herself and Everett Miller (Everett). Langevin then allegedly misrepresented the availability of housing at Sonny Lane to Annetta because of her race and refused to negotiate with her or rent an apartment to her at Sonny Lane. Annetta contends that she was steered by Langevin to Jackson Court Apartments, also operated by Spring Valley. The Jackson Court Apartments are occupied predominately by African–Americans, while Sonny Lane is occupied predominately, if not completely, by Caucasians. Langevin allegedly told Annetta that if any apartments became available for rent at Sonny Lane after she moved to Jackson Court, Defendants would let her out of her lease and rent her a unit at Sonny Lane. Annetta then executed a lease for an apartment at the Jackson Court complex.

Shortly thereafter, Annetta noticed that Defendants were advertising to rent an apartment at Sonny Lane. As a result, Annetta contacted Langevin about the possibility of viewing one of the apartments. Langevin allegedly told her that there was actually nothing available at Sonny Lane. Annetta then arranged to have a Caucasian couple make an appointment with Langevin to view an apartment at Sonny Lane. However, Annetta and Everett appeared for the appointment rather than the Caucasian couple. Langevin allegedly again misrepresented the availability of units at Sonny Lane to Plaintiffs because of their race and refused to negotiate or rent an apartment at that location. As a result of this incident, the Millers moved out of their Jackson Court apartment prior to the expiration of their lease.

Plaintiffs allege that Langevin's actions were taken in furtherance of "the specific discriminatory rental policies set forth by defendants Keoli and Naresh Goel." Specifically, Plaintiffs contend that Koeli instructed employees of Spring Valley that certain properties were for "whites only." For example, Plaintiffs allege that Spring Valley maintained the Sonny Lane and Brookhaven complexes for Caucasians while African Americans were steered toward the Jackson Court and Hilton Heights complexes. Plaintiffs allege that Koeli instructed Langevin and Buchanan and numerous other employees to carry out this discriminatory policy by refusing to negotiate with African Americans for the rental of housing in Sonny Lane or Brookhaven, misrepresenting the availability of apartments to African Americans at Sonny Lane and other locations, and steering African Americans to Jackson Court and Hilton Heights. Plaintiffs have submitted the affidavits of the following employees who attest to the existence of such a policy at Spring Valley: (1) John Dicken, a property manager for Spring Valley from 1987 through 1997; (2) Michelle Hughes, administrative assistant to Keoli from September 1997 through July 1999; (3) Donna Thomas, a Spring Valley employee from August 1998 through February 1999; (4) Diana Lewis, a leasing agent at Spring Valley from September 1997 through July 1998; and (5) Pamela Cox, a clerk for Spring Valley.

Plaintiffs now seek to certify a class of "all African–American persons who have sought, are seeking or will seek to rent housing from the defendants since September 1997, and who have been, are being or will be subject to the defendants' discriminatory practices based upon their race." Plaintiffs seek a permanent injunction enjoining Defendants from discriminating against African Americans in violation of the Fair Housing Act and remedial relief to remedy the past effects of Defendants' alleged discriminatory practices.

## II. ANALYSIS

■ To obtain class certification, Plaintiffs must satisfy the requirements of Federal Rule of Civil Procedure 23. Plaintiffs bear the burden of demonstrating that this case meets the requirements of Rule 23 and should be certified as a class. *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976). Initially, Plaintiffs must meet the requirements of numerosity, commonality, typicality, and adequacy of representation pursuant to Rule 23(a). *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993). Failure to meet any of these prerequisites precludes certification. Furthermore, Plaintiffs must satisfy one of the conditions of Rule 23(b). *Hispanics United of Dupage County v. Village of Addison, Ill.,* 160 F.R.D. 681, 686 (N.D.Ill.1995). In this case, Plaintiffs are seeking certification under Rule 23(b)(2) which states:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ... (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Because this court finds that this case falls within the ambit of Rule 23(b)(2), the court will focus its analysis on the requirements of Rule 23(a). In determining whether this class should be certified, this court recognizes that Rule 23 should be "liberally interpreted," and its policy "is to favor maintenance of class actions." *King v. Kansas City S. Indus., Inc.,* 519 F.2d 20, 25–26 (7th Cir. 1975).

### A. Numerosity

■ Rule 23(a)(1) of the Federal Rules of Civil Procedure permits certification if the class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). *See also Trull v. Plaza Assoc.,* 1998 WL 578173 *3 (N.D.Ill.1998). "[T]he party supporting a class action has the burden of demonstrating the numerosity requirement of a class action, and mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)." *Roe v. Town of Highland,* 909 F.2d 1097, 1100 n. 4 (7th Cir.1990). Furthermore, Plaintiffs cannot "rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Roe,* 909 F.2d at 1100. However, Plaintiffs are not required to state an exact number of persons existing in the class. *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989). "[A]lthough the one who asserts the class must show some evidence or reasonable estimate of the number of class members, if a plaintiff cannot provide precise numbers, a good faith estimate is sufficient to satisfy the numerosity requirement where it is difficult to assess the exact class membership." *Buycks–Roberson v. Citibank Fed. Sav. Bank,* 162 F.R.D. 322, 329 (N.D.Ill. 1995). Furthermore, this court is entitled to make common sense assumptions in making a determination of numerosity. *Hispanics,* 160 F.R.D. at 688.

Plaintiffs contend that Defendants own and manage over 210 rental units throughout the Danville area. If Defendants are found to have engaged in a policy of steering African Americans into racially segregated housing, Plaintiffs argue that each of these Spring Valley residents who have been steered to live in either Jackson Court or Hilton Heights would be entitled to benefit from injunctive relief. Plaintiffs contend that there are 30 to 40 potential class members who fit this criteria.

Plaintiffs further contend that the proposed class consists of an additional 150 to 200 African American persons who applied

for rental housing with Defendants. Plaintiffs base their estimate on information obtained through discovery. Plaintiffs assert that "well over 1200 persons have contacted defendants for the purpose of inquiring regarding the availability of apartments since January 1, 1998." Plaintiffs base this number on a review of Defendants' vacancy lists, appointment books, and invoices for credit checks over the three year period. According to Plaintiffs, these documents indicate that between thirty and sixty applicants per month made appointments to see units. While Defendants did not keep records of the race of applicants for housing, Plaintiffs use census data to estimate the number of these applicants who were African American. According to 1990 Census figures, approximately 7,841 African Americans live in Vermilion County, where Defendants' business is operated. Plaintiffs state that this represents 10 percent of the total population of Vermilion County. Census data further indicates that over 13 percent of rental units in Vermilion County were occupied by African Americans. From these figures, Plaintiffs contend that it is reasonable to assume 10 to 15 percent of applicants for rental housing from Defendants during the relevant time period were African American. In their Response, Defendants argue that "Plaintiffs' estimate of class size is based on simplistic assumptions not reasonably supported by factual evidence." Defendants point out what they believe to be flaws in Plaintiffs' analysis and argue that this court should decline to find numerosity based upon these "unfounded statistical assumptions."

■ With regard to the numerosity requirement based on the facts in the instant case, this court finds the case of *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974) instructive. In *Weathers*, an African American filed a class action against a realty corporation alleging violations of the Fair Housing Act. The plaintiff sought class certification for all black citizens "who have been or will be seeking housing" at the defendants' apartment building. *Weathers*, 499 F.2d at 1199. The Sixth Circuit found that the numerosity requirement was met where plaintiff made allegations that she was discriminated against because of her race and

that "there were others of her race who are, have been or will be seeking housing at defendants' property." *Weathers*, 499 F.2d at 1200. Based upon factual circumstances remarkably similar to the instant case, the court stated:

> In civil rights cases of the nature of the present case, the numerosity requirement is usually satisfied by the showing of a colorable claim by the named plaintiff who is a member of a larger class having potentially similar claims.

*Weathers*, 499 F.2d at 1200. In the instant case, Plaintiffs have certainly presented a colorable claim of discrimination in housing. In addition, this court believes this case to be a situation where it is difficult to assess exact class membership. Defendants did not maintain records of African Americans who inquired about renting from Spring Valley during the relevant time period. This court believes that Plaintiffs have made a good faith estimate of potential members of the proposed class in the absence of such records. Finally, even if this court were to agree with Defendants' extremely conservative estimate of potential class members, a smaller number of class members does not preclude a finding of numerosity. *See Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D.Ill. 1986) (certifying a class consisting of 29 members).

### B. Typicality

Defendants next argue that the Millers' claims fail to meet the typicality requirement of rule 23(a)(3). The Seventh Circuit has defined the typicality requirement as follows:

> The typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.

*Hispanics*, 160 F.R.D. at 689, *quoting De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). Furthermore, "the

factual identity between the claims of the named plaintiffs and the other class members is not necessary to satisfy the typicality requirement and ... similarity of legal theory may control even in the face of differences of fact." *Hispanics,* 160 F.R.D. at 689.

■ Defendants argue that the Millers' claims do not share the "same essential characteristics" of the proposed class claims because the claims are based upon oral rather than written representations. In support of their argument, Defendants cite *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584 (7th Cir.1993). In that case, the Seventh Circuit noted that "there is some authority that claims based substantially on oral rather than written communications are inappropriate for treatment as class actions unless the communications are shown to be standardized." *Retired Chicago Police Assoc.,* 7 F.3d at 598 n. 17. However, the court went on to note that this is primarily a concern in fraud and securities cases. *Retired Chicago Police Assoc.,* 7 F.3d at 598 n. 17. Furthermore, the case cited by Defendants concerned communications by the City of Chicago to various groups of city workers concerning health care coverage. The court noted that the proposed class representative, the Retired Chicago Police Association, had "not provided any evidence other than speculation that any alleged communications by the City or the [pension] Funds to the fire, laborer, or municipal [groups] were the same as those made to the police." *Retired Chicago Police Assoc.,* 7 F.3d at 597. The instant case alleges violations of the Fair Housing Act, and Plaintiffs represent the only group in the proposed class, African Americans who sought to rent from Spring Valley. Therefore, this court finds Defendants' argument unpersuasive.

Defendants next argue that the Millers' claims rest on "the peculiar circumstances of their dealings with defendant Langevin and his alleged oral representations to them." Defendants ask this court to compare the factual circumstances of the Millers' claim with that of other identified class members and find that the Millers have nothing in common with them other than their race. For example, Defendants argue that the Mil-lers do not claim to have been first shown an apartment with new carpeting at a predominately Caucasian building and then be excluded from the building because they had a pet. Defendants state that these are the circumstances surrounding one identified class member, Harriet Nash.

■ As this court has already stated, the claims of the named plaintiffs and class members need not be factually identical in all circumstances where there exists similarity of legal theory. *See Hispanics,* 160 F.R.D. at 689. Plaintiffs allege that they initially made inquiry about renting an apartment at Sonny Lane, a predominately Caucasian complex, in May 1999 and were told that there was none available. Plaintiffs were then allegedly steered toward renting at Jackson Court, a predominately African American complex. Plaintiffs further allege that they responded to an advertisement indicating that apartments were available at Sonny Lane in June 1999 and were again told that nothing was available. However, a Caucasian couple was given an appointment to see the apartment. Plaintiffs allege that other African Americans were likewise given false information about available apartments at Sonny Lane and Brookhaven or were discouraged from renting at either of these complexes due to their race. The factual circumstances through which Defendants accomplished this policy need not be identical for each proposed class member. Where Plaintiffs allege that the actions were taken as part of an overall discriminatory practice in violation of the Fair Housing Act, factual differences in how Defendants carried out a discriminatory policy are not sufficient to undermine typicality. *See Hispanics,* 160 F.R.D. at 689.

Finally, Defendants argue that Millers' claims are subject to unique defenses which destroy typicality. "[I]t is settled law that the presence of even an arguable defense against the named plaintiff that is not applicable to the proposed class ... can vitiate the adequacy of named plaintiff's representation." *Hardin v. Harshbarger,* 814 F.Supp. 703, 708 (N.D.Ill.1993). "The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only

to her so that the representation of the rest of the class ... will suffer." *Hardin*, 814 F.Supp. at 708. However, "it is only when a unique defense will consume the merits of a case that a class should not be certified." *Honorable v. The Easy Life Real Estate Sys.*, 182 F.R.D. 553, 560 (N.D.Ill.1998).

Defendants first argue that "the Millers' claim is subject to the defense that Spring Valley rarely permits existing tenants to break their lease in order to move to another unit." However, Plaintiffs allege that they were denied an apartment at Sonny Lane prior to moving to Jackson Court in addition to after moving to Jackson Court. Plaintiffs allege that this denial and the steering to Jackson Court were part of a discriminatory policy in place by Defendants. As a result, this court fails to see how the Millers' tenancy at Jackson Court would serve as a defense to Plaintiffs' allegations.

The Defendants also point out that they have filed a counterclaim against Annetta for breach of lease. Annetta moved out of Jackson Court in August 1999 as a result of the incidents which form the basis of her complaint. In her answer to Defendants' counterclaim for breach of lease, Annetta raises several affirmative defenses to the counterclaim based upon Defendants' alleged violations of the Fair Housing Act. Defendants cite several cases for the proposition that its counterclaim precludes a finding of typicality. However, these cases presented possible defenses to the claims of the named plaintiff which would potentially preclude a verdict in favor of the named plaintiff and which were not generally applicable to the proposed class members. *See Hardin*, 814 F.Supp. at 708 (claim of named plaintiff precluded by res judicata); *J.H. Cohn & Co. v. American Appraisal Assoc., Inc.*, 628 F.2d 994, 998 (7th Cir.1980) (defense of justifiable

reliance applicable to named plaintiff); *Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1165 (7th Cir.1974) (plaintiffs potentially excepted from usury statute because of type of loan received). Defendants' counterclaim does not present a defense which would preclude recovery on behalf of Annetta. Rather, the issues raised with regard to the counterclaim will revolve around the same issues which form the basis of the class allegations due to the affirmative defenses raised by Annetta. Therefore, based upon the circumstances of this case, this court finds that the counterclaim filed by Defendants against Annetta is not sufficient to destroy typicality.[2]

### C. Commonality

Finally, Defendants argue the Millers' claim does not present common questions of fact with the proposed class members. "To satisfy the Rule 23(a) commonality requirement, the individual plaintiffs need only demonstrate at least one question of law or fact is common to all class members." *Honorable*, 182 F.R.D. at 559. There are clearly questions of law and fact common to the class members including whether Naresh and Koeli Goel instructed rental agents to refuse to rent apartments at Sonny Lane and Brookhaven to African Americans, whether Defendants had a policy of steering African Americans to Jackson Court and Hilton Heights, and whether Defendants had a policy of misrepresenting the availability of apartments at Sonny Lane and Brookhaven to African Americans due to their race. "Where broad discriminatory policies and practices constitute the gravamen of a class suit, common questions of law or fact are necessarily presented." *Hispanics*, 160 F.R.D. at 688. Furthermore, "distinct factual contexts will

---

2. Defendants argue that the Millers are not adequate class representatives for the same reasons that Defendants believe the Millers' claims are not typical of those in the proposed class. "Rule 23(a)(4)'s adequacy of representation requirement has two elements: the adequacy of the named plaintiff's counsel and the adequacy of representation provided in protecting the different, separate, and distinct interests of the class members." *Hispanics*, 160 F.R.D. at 689.

"Thus, a class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Hispanics*, 160 F.R.D. at 689. Based upon the same reasoning outlined above with regard to the typicality of the Millers' claims, this court finds that the Millers will adequately represent the proposed class. In addition, Defendants do not contest the adequacy of Private Plaintiffs' class counsel.

be unified under a common claim for equitable relief," particularly in the context of Rule 23(b)(2) class actions. *Hispanics,* 160 F.R.D. at 688.

In support of their argument, Defendants cite *Patterson v. General Motors Corp.,* 631 F.2d 476 (7th Cir.1980) and *Allen v. City of Chicago,* 828 F.Supp. 543 (N.D.Ill.1993). This court finds these cases inapposite. Both involved allegations of employment discrimination in "the absence of an alleged discriminatory policy or practice of general application." *Allen,* 828 F.Supp. at 552. *See also Patterson,* 631 F.2d at 481. ("[T]he plaintiff's claims do not relate to general policies or practices which are allegedly discriminatory, but rather to individualized claims of discrimination which could not possibly present common questions of law or fact sufficient to justify class action treatment.") As discussed above, Plaintiffs have alleged a broad discriminatory policy of Defendants to prevent African Americans from living in predominately Caucasian complexes and steering them to predominately African American complexes. In response, Defendants argue that there is no evidence to support the claim that some overarching policy or practice of race discrimination links the claims of potential class members with those of Plaintiffs. However, when "evaluating the motion for class certification, the allegations made in support of certification are taken as true; the merits of the case are not examined." *Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669, 671 n. 2 (N.D.Ill.1989). Therefore, this argument is also unavailing.

For the foregoing reasons, Private Plaintiffs' Motion for Class Certification (# 52) is GRANTED.